# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TERRIE LAKES, | ) | |
| | ) | No. 15 C 7387 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff, Terrie Lakes, appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). Defendant's motion for summary judgment to affirm the Commissioner's decision is denied; the Court grants Plaintiff's motion for the reasons outlined below, and remands for further proceedings consistent with this opinion.

## STATEMENT OF FACTS

### I.    PROCEDURAL HISTORY

On September 24, 2013, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Act, alleging a disability onset date of September 1, 2013, due to impairments arising from mental illness and high blood pressure (also known as "hypertension"). R. at 185, 202. Plaintiff's claims were denied initially on December 19, 2013; denied upon reconsideration on July 10, 2014; and denied upon hearing in front of an Administrative Law Judge ("ALJ") on December 16, 2014. R. at 81–87, 88–95, 96–116. Plaintiff then appealed the ALJ's unfavorable decision, but the Appeals Council denied review on June 23, 2015, thereby

rendering the ALJ's decision the Commissioner's final decision. R. at 1; *see Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). Plaintiff subsequently filed a complaint in this Court on August 21, 2015, appealing the Commissioner's denial of benefits. Pl.'s Br. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c).

## II. OVERVIEW

Plaintiff's medical record details that Plaintiff primarily suffers from hypertension, depression, and headaches. *See, e.g.*, R. at 382. At the ALJ's hearing, Plaintiff testified that she experiences sharp headache pain; that her blood pressure is not controlled; that her medications make her dizzy, sleepy, and groggy; and that she lies down due to headaches several times daily. R. at 109. Plaintiff also alleged her depression causes her to not want to get out of bed or eat, and to be withdrawn from family and friends. R. at 109. Additionally, at the time of the ALJ's hearing, Plaintiff was fifty-one years old; five feet, two-and-three-fourths inches tall; and weighed 178 pounds. R. at 26, 27. Based on Plaintiff's height and weight, she had a resulting body mass index (BMI) of 31.36. R. at 344. With a BMI of 31.36, Plaintiff suffered from Level I obesity. SSR 02-1p, 2002 WL 34686281, at *2.

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff was not disabled under the Act during the period from September 24, 2013 (the date Plaintiff filed her disability application), through December 16, 2014 (the date of the ALJ's decision). R. at 115–16. The ALJ found that Plaintiff had four severe impairments: hypertension, migraine headaches, obesity, and major depressive disorder. R. at 101. These impairments were labeled "severe" because they "significantly limit [Plaintiff's] ability to perform basic work activities." R. at 101. The ALJ concluded that Plaintiff does not

have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 101.

After consideration of the entire record, the ALJ determined that Plaintiff's residual functional capacity ("RFC") allowed her to perform medium work, which includes "simple, routine, and repetitive tasks; work in an environment free of fast-paced production requirements; simple work related decision making; and few, if any, changes in work setting." R. at 103. Then, based on the medical evidence, Plaintiff's testimony, the medical expert's testimony, the vocational expert's testimony, third party statements, and the ALJ's own assessment of Plaintiff's RFC, the ALJ concluded that although Plaintiff had no past relevant work, she was able to perform the requirements of occupations such as hospital cleaner, laundry worker, sorter, and child care attendant. R. at 114–15. Accordingly, the ALJ found Plaintiff was "not disabled" under the Act. R. at 115.

In her opinion, the ALJ considered several medical opinions to determine Plaintiff's disability status, including the opinions of Dr. Allen Heinemann, Ms. Kristin Reitz, and Dr. Munawar Sultana. R. at 112. Dr. Heinemann is a medical expert and licensed clinical psychologist who did not personally exam Plaintiff, but testified at the ALJ's hearing after reviewing Plaintiff's medical records. R. at 109. Dr. Heinemann opined that according to the available medical records, Plaintiff's mental impairments did not meet listing 12.04 because the B criteria was not met, even though the A criteria was sufficient. R. at 109. Dr. Heinemann stated that although Plaintiff had been diagnosed with major depressive disorder, her activities of daily living and social functioning were only mildly limited, though her ability to concentrate, persist, and maintain pace was moderately limited. R. at 109. Ultimately, Dr. Heinemann found that Plaintiff "could perform unskilled work" and that "jobs where there is a slower pace, would be

3

possible." R. at 110. The ALJ afforded Dr. Heinemann's opinion substantial weight because even though Dr. Heinemann did not personally examine Plaintiff, his opinion was "consistent with the medical evidence of record," and he had "superior professional qualifications to Ms. Reitz." R. at 112.

Ms. Reitz is a treating social worker who personally examined Plaintiff during individual therapy sessions. R. at 107. Ms. Reitz opined that Plaintiff's impairments could cause Plaintiff to be absent from work more than three times per month. R. at 112. Ms. Reitz also believed that Plaintiff's ability to maintain attention and concentration for extended periods, to complete a normal workday without interruptions from psychological based symptoms, and to perform at a consistent pace without an unreasonable number of rest periods was markedly limited. R. at 112. Ms. Reitz further opined that Plaintiff's depression caused moderate restriction in Plaintiff's daily activities, marked difficulties in Plaintiff's social functioning, and moderate difficulties in Plaintiff's concentration. R. at 112. The ALJ did not accord Ms. Reitz's opinion much weight because it was only "based on a one month treating relationship, consisting of 4 visits." R. at 112. The ALJ also believed that Ms. Reitz's opinion set forth "very restrictive severe limitations which [were] inconsistent with her treatment notes showing generally fairly intact mental status exams," and that her opinion was "inconsistent with the remainder of the medical evidence of record, which shows negative mental health screens and the consultative examination, which shows no more than mild depression as well as with Dr. Heinemann's opinion." R. at 112.

Dr. Sultana is a treating physician who personally examined Plaintiff and consistently monitored Plaintiff's hypertension. R. at 105. Dr. Sultana's treatment notes generally show Plaintiff had normal physical findings, with the exception of hypertension. R. at 110. Dr. Sultana did not feel comfortable filling out Plaintiff's functional capacity evaluation because she "did not

4

have [the] training or equipment to do the evaluation for work capacity." R. at 106. Dr. Sultana did however provide a letter reciting certain facts about Plaintiff, but since no opinion was stated in that letter, the ALJ did not evaluate Dr. Sultana's letter. R. at 112.

## DISCUSSION

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, if it is supported by substantial evidence, and if it is free of legal error. 20 C.F.R. §§ 404.1520(a), 416.920(a); 42 U.S.C. § 1383(c). This Court must reverse if there is an error of law, even if the evidence adequately supports the conclusion. *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless build a "logical bridge" between the evidence and his conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[] articulat[ion]" of the ALJ's justification is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

### II. ANALYSIS

Plaintiff has raised several arguments on appeal, one of which supports reversal and remand of the ALJ's decision. Although Plaintiff's other arguments are unavailing, in the interest of completeness, the Court addresses each of Plaintiff's arguments in turn.

**A. The ALJ properly considered the cumulative effect of Plaintiff's physical and mental impairments, including Plaintiff's obesity and headaches, in reaching her RFC determination.**

First, Plaintiff asserts that the ALJ erred in failing to evaluate the cumulative effect of Plaintiff's obesity when assessing Plaintiff's RFC; the Court disagrees. An ALJ is required to "consider the exacerbating effects of a claimant's obesity on her underlying conditions."

*Hernandez v. Astrue*, 277 F. App'x 617, 623–24 (7th Cir. 2008). This is true even when a claimant does not explicitly list obesity as one of her impairments, provided that the ALJ is put on notice that the claimant's obesity could be a relevant factor. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). However, an ALJ's failure to explicitly consider the claimant's obesity will be deemed harmless error if an obese claimant does not specify how obesity impairs the claimant's ability to work, but the ALJ nevertheless implicitly considers the claimant's obesity. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Where it is unclear whether an ALJ implicitly considered the claimant's obesity though, remand is appropriate. *See, e.g.*, *Milad v. Colvin*, No. 14 CV 4627, 2016 WL 374138, at *6 (N.D. Ill. Feb. 1, 2016).

The ALJ's failure to explicitly discuss Plaintiff's obesity constitutes harmless error in the present case.[1] Despite Plaintiff not listing obesity as one of her impairments on her disability application, the ALJ appropriately determined that obesity could be a relevant factor in Plaintiff's case by finding that obesity was one of Plaintiff's severe impairments.[2] R. at 101, 202. However, since Plaintiff never specified how obesity exacerbated her condition or impaired her ability to work, the ALJ was only required to implicitly consider Plaintiff's obesity when making her RFC determination. *See generally* ALJ Hr'g Tr., Pl.'s Br., Pl.'s Reply Br., Pl.'s Disability Appl. (showing Plaintiff never discusses how obesity poses additional limitations).

---

[1] The Court believes that the ALJ's summary statement that "the claimant's obesity has been taken into consideration in the limitations assessed" cannot properly be considered an explicit consideration of Plaintiff's obesity.

[2] An ALJ is put on notice that a claimant's obesity could be a relevant factor when there are numerous references to the claimant's obesity in the record. *Clifford*, 227 F.3d at 873. In Plaintiff's case, the ALJ was required to consider the exacerbating effect of Plaintiff's obesity because there are numerous references to Plaintiff's obesity in the case record. *See, e.g.*, R. at 371–77 (showing the treatment notes from one of Plaintiff's visits with Dr. Sultana describe Plaintiff as "obese," discuss that "education was done about [Plaintiff's] diet and weight control," and include dieting and exercising in Plaintiff's "Self Management Goals").

The Court finds that the ALJ implicitly considered Plaintiff's obesity because she relied on Dr. Sultana's treatment notes, which expressly mention Plaintiff's obesity, to determine the extent of Plaintiff's limitations. *See Halsell v. Astrue*, 357 F. App'x 717, 723 (7th Cir. 2009) (showing implicit consideration of claimant's obesity is sufficient when ALJ relies on doctor's report which expressly mentions claimant's obesity); R. at 344 (showing that Dr. Sultana's treatment notes describe Plaintiff as "[o]bese" and indicate that Plaintiff's BMI is 31.36); R. at 110 (showing that the ALJ mentions this note when explaining how she determined that Plaintiff's limitations did not impair functioning beyond the ALJ's RFC finding). Thus, contrary to Plaintiff's assertions, the ALJ acknowledged Plaintiff's obesity, but reasoned that despite this obesity, Plaintiff still had a "normal physical examination except for [her] blood pressure," so a more limiting RFC was not warranted. R. at 110 (referencing R. at 351). Therefore, because the ALJ adequately considered the cumulative effect of Plaintiff's obesity on her limitations, the Court must affirm the ALJ's obesity analysis.

Next, Plaintiff argues that the ALJ erred in failing to evaluate the cumulative effect of Plaintiff's headaches when assessing Plaintiff's RFC; the Court likewise disagrees. An ALJ's RFC determination must be supported by "substantial evidence." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) (quoting *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (internal quotations omitted)). The ALJ must base the RFC determination "on *all* of the relevant evidence in the case record," and "include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *2, *7. Although this "deferential standard of review is weighted [sic] in favor of upholding the ALJ's decision," the Court will reverse the ALJ's decision if the

7

ALJ does not build a "logical bridge" from the evidence to her conclusion. *Moon*, 763 F.3d at 721.

In this case, the ALJ's RFC determination is supported by substantial evidence because it is logically connected to the evidence related to Plaintiff's headaches. Contrary to Plaintiff's assertions, the ALJ did consider the combined effect of Plaintiff's headaches when determining Plaintiff's RFC. In limiting Plaintiff to medium work, the ALJ specifically qualified her RFC determination by adding that she was including "a number of restrictions to simple work in [a] low stress work setting to address functional deficits from the combination of [Plaintiff's] mental impairments *and headaches*." R. at 111 (emphasis added). The Court is able to logically follow how the ALJ reached this restrictive RFC, because prior to making her determination, the ALJ acknowledged that "[t]he medical expert noted that the claimant takes numerous naps or lies down *because of headaches*, [and] that she would certainly need her morning, afternoon and lunch breaks." R. at 110 (emphasis added). The ALJ also highlighted that despite the need for such headache breaks, the medical expert opined that although a high demand job was not possible for Plaintiff, "jobs where there is a slower pace, would be possible." R. at 110. Thus, because the ALJ's RFC mirrors the medical expert's opinion, an opinion that was given substantial weight, the Court is able to trace the ALJ's RFC determination. *See* R. at 112 (showing ALJ gave substantial weight to medical expert's opinion).

Further, the ALJ explained that her RFC finding was appropriate even when considering Plaintiff's headaches, because "the medical evidence of record is consistent in terms of documenting mostly benign clinical findings, with the exception of fluctuating blood pressure readings." R. at 113. The Court finds that this RFC was supported by substantial evidence in the ALJ's decision because the ALJ cited these "benign clinical findings" in her thorough review of

the medical record. For example, when discussing Plaintiff's limitations, the ALJ discussed that Plaintiff's complaints of daily headaches "are not documented in Dr. Sultana's treatment notes." R. at 111. The Court believes that the ALJ's finding that the evidence reveals "relatively few complaints of headaches" is consistent with Dr. Sultana's most recent treatment notes which indicate Plaintiff repeatedly denied headache pain. *See* R. at 111, 345, 350, 355, 357, 360, 366. *See also* R. at 400 (showing when Plaintiff initially complained of headaches, Dr. Sultana considered them "hypertensive headaches" due to Plaintiff's high blood pressure); R. at 393 (showing Plaintiff has since stated her "headaches have improved with improvement of [blood pressure]").

Even where the headache evidence was less "benign" though, the ALJ did not ignore the contradictory evidence, but rather noted the contradiction, and explained that it did not warrant much weight. *See* R. at 112 (showing ALJ did not accord much weight to Ms. Reitz's opinion because it was based on a short treating relationship, it was inconsistent with her own treatment notes, and it was inconsistent with the rest of the medical record); *see also Munoz v. Barnhart*, 47 F. App'x 770, 775 (7th Cir. 2002) (stating that "[i]t is the ALJ's job, and not this court's, to weigh the evidence, resolve conflicts, and make findings of fact"). Notably, Ms. Reitz's notes are internally inconsistent since Ms. Reitz records Plaintiff's allegations of headaches in her treatment notes, but does not mention Plaintiff's headaches anywhere in her RFC questionnaire. *See, e.g.*, R. at 340–42, 403, 411, 413. Thus, because the ALJ considered all the relevant evidence and based her RFC determination on substantial evidence, the Court must also affirm the ALJ's headache analysis.

**B. The ALJ improperly evaluated the credibility of Plaintiff's allegations.**

Plaintiff contends that the ALJ erred in discounting Plaintiff's allegations regarding the nature and extent of her symptoms; this time, the Court agrees. Since the ALJ issued her decision in Plaintiff's case, the Social Security Administration has issued new guidance on how an ALJ is to assess a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016), superseding SSR 96-7p. The new guidance eliminates the term "credibility" from its sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, at *1. "While [this] new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the 'credibility' analysis of former SSR 96-7p." *Farrar v. Colvin*, No. 14 C 6319, 2016 WL 3538827, at *5 n.3 (N.D. Ill. June 29, 2016).

The ALJ determined that Plaintiff's allegations were not entirely credible because Plaintiff's "chronic noncompliance with prescribed treatment . . . undermine[s] her allegations of severely disabling symptoms." R. at 111. However, before an ALJ draws a negative inference from Plaintiff's noncompliance with treatment, the ALJ "must first explore the claimant's possible reasons for the lack of medical care." *Pietruszynski v. Colvin*, No. 14 C 2148, 2016 WL 1535158, at *7 (N.D. Ill. Apr. 14, 2016). Once the ALJ has explored these possible reasons, the regulations dictate that the ALJ "will explain how [she] considered the individual's reasons in [her] evaluation of the individual's symptoms." SSR 16-3p, at *8.

Here, the ALJ erred in her credibility analysis because she did not discuss "possible reasons" for Plaintiff's noncompliance with treatment, despite having inquired about such reasons during the ALJ hearing. First, the ALJ notes that Plaintiff has been noncompliant with treatment because she was "not taking her medications as prescribed." R. at 111. However, when the ALJ asked Plaintiff about Dr. Sultana questioning Plaintiff's compliance with medication,

Plaintiff responded, "[i]t was like she kept adding medication." R. at 32. Shortly after this statement, Plaintiff testified, "I'm scared to take anything else. I'm taking all this medication already." R. at 34. Yet, the ALJ does not explain "whether the evidence of record supports any of the [Plaintiff's] statements" regarding noncompliance with medication. SSR 16-3p, at *9. Notably, although the record does provide that Dr. Sultana had reservations about Plaintiff's medication compliance, it also provides that Plaintiff had been prescribed six different medications. R. at 347. Because the ALJ did not provide any explanation for why Plaintiff's fear of taking more medication was discounted, the Court is unable to trace the ALJ's reasoning for determining Plaintiff was noncompliant with medication treatment. *See Clifford*, 227 F.3d at 874 (showing that "[f]or meaningful appellate review," the Court "must be able to trace the ALJ's path of reasoning").

The ALJ likewise cited Plaintiff "not obtaining recommended tests" as a reason for determining Plaintiff was noncompliant with treatment. R. at 111. However, when the ALJ confronted Plaintiff about not following up with testing at Swedish Covenant Hospital, Plaintiff mentioned that she was not able to get an appointment there:

> [T]hey said [she] needed a referral from [Dr. Sultana]. Sol [sic] they were supposed to call [Dr. Sultana] back, but [Dr. Sultana] never even could get in connection with them. So [Dr. Sultana] gave [Plaintiff] another appointment to see a cardiologist at a place on Claiborne [sic] and Division. She just gave [Plaintiff] that. So that's like November 15th.

R. at 32. Yet, the ALJ again does not explain "whether the evidence of record supports any of the [Plaintiff's] statements" regarding noncompliance with recommended testing. SSR 16-3p, at *9. Notably, the record does show, as Plaintiff alleges, that Plaintiff informed Dr. Sultana that she was having difficulty scheduling an appointment with Swedish Covenant Hospital, and that Dr. Sultana indeed referred Plaintiff for a future appointment. R. at 345, 347. Because the ALJ did

not provide any explanation for why Plaintiff's scheduling difficulties were discounted, the Court cannot trace the ALJ's reasoning for discounting this evidence. Therefore, because it appears that the ALJ ignored the dictates of SSR 16-3p, which requires explanation for how Plaintiff's reasons for noncompliance were considered, remand is necessary for a proper credibility determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is denied, and the ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

Date: 9/14/2016

_____
U.S. Magistrate Judge, Susan E. Cox